**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ACTIVE DESIGN POLYMER,**
**LLC,**

                     **Plaintiff,**

          **v.**

**MYLES ALEX WALSH et al.**,

                   **Defendants.**
_____

**1:21-cv-426**
**(GLS/CFH)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Toporowski Law, PLLC | MATTHEW A. TOPOROWSKI, |
| PO Box 7271 | ESQ. |
| Albany, NY 12224 | |
| | |
| The Wagoner Firm PLLC | MATTHEW D. WAGONER, ESQ. |
| 150 State Street, Suite 504 | MARK J. WAGNER, JR., ESQ. |
| Albany, NY 12207 | |
| **FOR THE DEFENDANTS:** | |
| _Myles Alex Walsh, ePaint_ | |
| _Company & Smartpaint, Inc._ | |
| Klingman Law, LLC | PATRICK A. KLINGMAN, ESQ. |
| 280 Trumbull Street Floor 21 | |
| Hartford, CT 06103-3514 | |
| | |
| _Steven W. Fisher &_ | |
| _Netminder, LLC_ | |
| 122 South Church Street | CURTIS P. CHEYNEY, III, ESQ. |
| West Chester, PA 19382 | |
| | |
| _Steven W. Fisher_ | |

Girvin & Ferlazzo, P.C.                    GERARD E. MANEY, ESQ.
20 Corporate Woods Boulevard
Albany, NY 12211-2350

*Capital Resin Corporation*
Goldberg Segalla, LLP                      JONATHAN M. BERNSTEIN,
8 Southwoods Boulevard,                    ESQ.
Suite 300
Albany, NY 12211-2526

665 Main Street                            MATTHEW S. TROKENHEIM,
Buffalo, NY 14203-1425                     ESQ.

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Active Design Polymer, LLC (ADP) commenced this action

against defendants Myles Alex Walsh, ePaint Company, Smartpaint, Inc.,

Steven W. Fisher, Netminder, LLC, and Capital Resin Corporation on April

14, 2021, alleging violations of the Defend Trade Secrets Act[1] (DTSA) and

state law.  (Compl., Dkt. No. 1.)  Now pending are defendants' motions to

dismiss, (Dkt. Nos. 25, 28, 30), which the court converted to motions for

summary judgment "insofar as they s[ought] dismissal because plaintiff

lack[ed] the capacity to sue," (Dkt. No. 46), and ADP's cross-motions to

---

[1] *See* 18 U.S.C. §§ 1836-39.

amend the complaint.  (Dkt. Nos. 38, 49.)  For the reasons that follow, defendants' motions are granted, ADP's motions are denied, and the complaint is dismissed.

## II. Background

### A.   Facts[2]

Plaintiff ADP is "a domestic limited liability company organized and existing under the laws of the State of New York."  (Compl. ¶ 12.)  ADP "develop[s] polymer and resin technology to be used in coatings serving the aquaculture market."  (*Id.* ¶ 45.)  ADP's products are used to coat items such as fishing nets, lines and traps, oyster cages, crab and lobster pots, and boat hulls.  (*Id.* ¶¶ 47, 58-59.)  ADP's coatings are used to "prevent unwanted marine growth, to preserve the nets[,] and promote fish health."  (*Id.* ¶ 49.)  Terry McKane and James Leonard are both member-mangers of ADP.  (*Id.* ¶¶ 31-32.)

Defendants are individuals or entities, who, ADP alleges, misappropriated ADP's trade secrets, confidential information, and other proprietary information.  (*See generally id.*)  ADP's relationship with

---

[2] Due to the court's partial conversion of defendants' motions to dismiss to motions for summary judgment "insofar as they s[ought] dismissal because plaintiff lack[ed] the capacity to sue," (Dkt. No. 46), any facts related to ADP's capacity to sue are not in dispute.  All other facts are drawn from ADP's complaint, (Dkt. No. 1), and presented in the light most favorable to it.

defendants began cooperative in nature, with ADP executing various agreements with them, providing them with sample products, selling them products, and working with them to expand and refine its own products. (*Id.* ¶¶ 67-97.)  However, after McKane and Leonard's relationship "deteriorated," sometime in 2015, "Leonard began leaking AD[P]'s confidential information and trade secrets to [d]efendants with the aim of working with them directly after he broke up ADP."  (*Id.* ¶¶ 98-99.)

McKane and Leonard are "both . . . managers of ADP, with each having a fifty percent membership interest."  (Dkt. No. 48, Attach. 1 ¶ 2.) ADP's operating agreement states that: ADP's business "shall be managed by [a majority vote of] the Board of Managers," including its "power and authority to . . . commence lawsuits."  (Dkt. No. 47, Attach. 1 at 6-7.)  The operating agreement further lays out that McKane and Leonard constitute the Board of Managers.  (*Id.* at 3-4, 20-21.)

### B.   Procedural History

ADP filed its complaint on April 14, 2021.  (Dkt. No. 1.)  Defendants then moved to dismiss.  (Dkt. Nos. 25, 28, 30.)  ADP cross-moved to amend the complaint.  (Dkt. No. 38.)  In connection with defendants' motions to dismiss, they argued, among other things, that ADP's suit was

subject to dismissal because it lacked the capacity to sue.  (Dkt. No. 30, Attach. 1 at 14-19; Dkt. No. 43, Attach. 1 at 3-8; Dkt. No. 45 at 1-4.)  In making this argument, defendants relied on documents that may not be considered by the court under Rule 12(b)(6), which prompted the court to partially convert the motions to dismiss into motions for summary judgement, insofar as they sought dismissal for lack of capacity, and allowed the parties to supplement their filings.  (Dkt. No. 46.)  As part of its supplemental briefing, ADP "withdr[e]w[] its pending cross-motion for leave to amend the [c]omplaint and cross-move[d] . . . for leave to amend" a second time, in part, to cure the potential capacity defect.  (Dkt. No. 49, Attach. 1 at 8.)  Now pending are defendants' motions, (Dkt. Nos. 25, 28, 30), and ADP's cross-motion to amend, (Dkt. No. 49).

### III.  <u>Standards of Review</u>

### A.  <u>Cross-Motion to Amend</u>

Rule 15 of the Federal Rules of Civil Procedure allows a party not otherwise permitted to amend its pleading to do so with leave of the court. *See* Fed. R. Civ. P. 15(a)(2). The rule mandates that "[t]he court should freely give leave when justice so requires."  *Id.*  Barring "futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by

amendments previously allowed, or undue prejudice to the non-moving party," leave should generally be granted. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citation omitted). "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) (citation omitted). "The non-moving party bears the burden of establishing why leave to amend should not be granted." *Linares v. Richards*, No. 08-CV-3243, 2009 WL 2386083, at *9 (E.D.N.Y. Aug. 3, 2009) (citations omitted).

**B.**   **Motion to Dismiss**

   1.   *Rule 12(b)(6)*

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

2.    *Rule 12(b)(2)*

"When responding to a Rule 12(b)(2) motion to dismiss for lack of

personal jurisdiction, the plaintiff bears the burden of establishing that the

court has jurisdiction over the defendant." *Bank Brussels Lambert v.*

*Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (citation

omitted).  In assessing such a motion, a court may consider materials

outside the pleadings.  *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,

722 F.3d 81, 86 (2d Cir. 2013).  Prior to the completion of discovery, "the

plaintiff's prima facie showing [of personal jurisdiction] may be established

solely by allegations."  *Id.* at 85 (quoting *Ball v. Metallurgie*

*Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990); *see Hollins v.*

*U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 70 (E.D.N.Y. 2006).

In deciding whether a plaintiff has made a prima facie showing of

jurisdiction, the court "construe[s] the pleadings and affidavits in the light

most favorable to plaintiff[], resolving all doubts in [its] favor."  *Chloé v.*

*Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (citation

omitted).  However, the plaintiff "must make allegations establishing

jurisdiction with some factual specificity and cannot establish jurisdiction

through conclusory assertions alone."  *Cont'l Indus. Grp. v. Equate*

*Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014) (internal quotation marks and citation omitted); *see DeLorenzo v. Ricketts & Assocs.*, No. 15-CV-2506, 2017 WL 4277177, at *5 (S.D.N.Y. Sept. 25, 2017) ("[C]onclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a *prima facie* showing of jurisdiction." (citations omitted)); *SODEPAC, S.A. v. CHOYANG PARK*, No. 02 Civ. 3927, 2002 WL 31296341, at *5 (S.D.N.Y. Oct. 10, 2002) ("Vague and generalized allegations . . . are insufficient to make a prima facie showing of jurisdiction over an out-of-state defendant." (citations omitted)).

## C.   **Motion for Summary Judgment**

The standard of review under Fed. R. Civ. P. 56 is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV.  **Discussion**

## A.   **ADP's Cross-Motion to Amend**

ADP has "withdraw[n] its pending [first] cross-motion for leave to

8

amend the [c]omplaint and cross-moves for leave to amend" a second time

now in order to, among other things, cure its alleged capacity defect,  (Dkt.

No. 49, Attach. 1 at 8).[3]  Defendants argue that ADP's motion to amend

should be denied because of futility, undue delay, and bad faith.  (Dkt. No.

43, Attach. 1 at 23-25; Dkt. No. 44 at 18-22; Dkt. No. 45 at 17-18; *see*

*generally* Dkt. Nos. 51, 52, 53.)  Additionally, they contend that, because

ADP does not have the capacity to sue, it does not have the capacity to

amend the complaint either.  (Dkt. No. 43, Attach. 1 at 23-25; Dkt. No. 44 at

18-22; Dkt. No. 45 at 17-18; *see generally* Dkt. Nos. 51, 52, 53.)  For the

reasons set out in detail below, ADP's proposed amendments are denied

as futile.

      1.   *The DTSA Claim Against Walsh, ePaint, Smartpaint, Fisher,
and Netminder*

Walsh, ePaint, Smartpaint, Fisher, and Netminder all argue that

amendment would be futile because personal jurisdiction is lacking.  (Dkt.

No. 43, Attach. 1 at 8-18, 23-25; Dkt. No. 45 at 17-18.)  ADP contends that

there is a basis for jurisdiction over Walsh, ePaint, Smartpaint, Fisher, and

---

[3] ADP's first motion to amend did not address the issue of capacity.  (*See generally* Dkt. No. 38, Attach. 44.)  To the extent relevant, the court will construe any arguments made by defendants in opposition of ADP's withdrawn first motion to amend as against its second motion to amend.

Netminder under two provisions of New York's long-arm statute: N.Y.

C.P.L.R. § 302(a)(1), or, alternatively, § 302(a)(3)(ii).[4]   (Dkt. No. 38, Attach.

47 at 5-20.)  For the reasons that follow, personal jurisdiction over Walsh,

ePaint, Smartpaint, Fisher, and Netminder, with respect to ADP's DTSA

claim,[5] is lacking.

To make a prima facie showing of personal jurisdiction, a plaintiff

must demonstrate: (1) procedurally proper service of process upon the

defendant; (2) "a statutory basis for personal jurisdiction that renders such

service of process effective"; and (3) that "the exercise of personal

jurisdiction must comport with constitutional due process principles."  *Licci*

*v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012).

N.Y. C.P.L.R. 302(a)(1) states, in pertinent part: "[A] court may

exercise personal jurisdiction over any non-domiciliary . . . who in person or

through an agent . . . transacts any business within the state or contracts

---

[4]  This provision is irrelevant regarding ADP's DTSA claim, as this provision only supports jurisdiction with respect to tort causes of action.  *See Florczak v. Staffieri*, No. 3:06-CV-0064, 2006 WL 1085173, at *3 (N.D.N.Y. Apr. 25, 2006); *see also Fid. Nat'l Title Co. v. U.S. Small Bus. Admin.*, No. 2:13-cv-02030, 2016 WL 3344082, at *2 (E.D. Cal. June 15, 2016) ("[A] federal claim seeking [a] specific statutory remed[y is] not a tort claim.").

[5]  *See Remick v. Manfredy*, 238 F.3d 248, 255 (3rd Cir. 2001) (finding that determining long-arm personal jurisdiction "is claim specific because a conclusion that the District Court has personal jurisdiction over one . . . as to a particular claim asserted by [the plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [the plaintiff's] other claims"); *accord RJM Aviation Assoc. Inc. v. GP Aviation Servs., LLC*, No. 3:06-CV-2007, 2008 WL 918538, at *5 (D. Conn. Mar. 28, 2008).

anywhere to supply goods or services in the state."  There are two

circumstances under which this statute applies: "where a defendant

'transacts any business' in the state and where a defendant 'contracts

anywhere to supply goods or services' in the state."  *D&R Glob. Selections,*

*S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 297 (2017)

(citation omitted).  ADP contends jurisdiction is proper under the

"transact[ing] business" prong.  (Dkt. No. 38, Attach. 47 at 5-11.)

Jurisdiction under N.Y. C.P.L.R. 302(a)(1) requires a two-step

showing, (1) "the defendant must have purposefully availed itself of the

privilege of conducting activities within the forum State by . . . transacting

business in New York" and (2) "the claim must arise from that business

transaction."  *D&R Glob. Selections*, 29 N.Y.3d at 297. (internal quotation

marks and citation omitted); *see Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d

460, 467 (1988) ("[P]roof of one transaction in New York is sufficient to

invoke jurisdiction, even though the defendant never enters New York, so

long as the defendant's activities here were purposeful and there is a

substantial relationship between the transaction and the claim asserted."

(citations omitted)).

Under the second prong of this analysis, a plaintiff's claim must have

11

an "articulable nexus" or "substantial relationship" with the defendant's

transaction of business in New York.  *See D&R Glob. Selections*, 29

N.Y.3d at 298-99; *see also Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7,

12 (2d Cir. 2018) ("The New York Court of Appeals has explained that a

plaintiff must provide an articulable nexus or substantial relationship

between defendant's New York activities and the parties' contract [or

transaction]" (internal quotation marks and citation omitted)).  "The

[articulable] nexus is insufficient where the relationship between the claim

and transaction is too attenuated or merely coincidental."  *D&R Glob.*

*Selections*, 29 N.Y.3d at 299 (internal quotation marks and citations

omitted).

Regardless of whether ADP can satisfy the first prong of the N.Y.

C.P.L.R. 302(a)(1) analysis, there is no "articulable nexus" or "substantial

relationship" between the business defendants transacted in New York and

ADP's DTSA claim.  Regarding Walsh, ePaint, Fisher, and Netminder, ADP

alleges that there were five contractual relationships between itself, and

these defendants.[6]  (Prop. Am. Compl. ¶¶ 76, 80, 88, 91, 95.)  However,

---

[6] ADP does not allege any contractual relationship between itself and Smartpaint. (*See generally* Prop. Am. Compl., Dkt. No. 49, Attach. 4.)

12

the proposed amended complaint does not contain any allegation that the DTSA claim arose from these contracts or any transaction related thereto. (*See generally* Prop. Am. Compl.)  While the proposed amended complaint appears to allege that defendants' New York transactions with ADP involved ADP trade secrets because defendants were required to sign non-disclosure agreements, (*id.* ¶¶ 80, 95), there is nothing in the complaint alleging that it was through these transactions that defendants gained access to the ADP trade secrets they allegedly misappropriated, (*see generally id.*).  In fact, the proposed amended complaint specifically alleges that defendants gained access to and misused ADP's trade secrets through their relationship with Leonard, a non-defendant in this case, rather than through any New York business they transacted with ADP.  (*Id.* ¶ 114 ("Upon information and belief, as early as February 2015, Mr. Leonard began misusing ADP's confidential information and trade secrets with Defendants."); *see id.* ¶¶ 117, 142, 160-63, 179, 193, 205, 231, 242, 245, 246, 251, 269.)  Accordingly, personal jurisdiction is lacking with respect to Walsh, ePaint, Smartpaint, Fisher, and Netminder for ADP's DTSA claim, and, thus, ADP's proposed amendments would be futile.

2.    *The DTSA Claim Against Capital*

Capital argues that ADP's proposed amendments are futile because the claims against it, including the DTSA claim, are time-barred.  (Dkt. No. 44 at 20.)  ADP contends that its DTSA claim against Capital is not time-barred because ADP was not, and could not have been, aware of this claim within the statute of limitations due to Capital's fraudulent concealment, and that the statute of limitations was equitably tolled.  (Dkt. No. 38, Attach. 47 at 20-24.)

Claims under the DTSA "may not be commenced later than [three] years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered."  18 U.S.C. § 1836(d); *see Zirvi v. Flatley*, 838 F. App'x 582, 585 (2d Cir. 2020) (citation omitted).

"[T]olling doctrines such as fraudulent concealment stop the statute of limitations from running even if the accrual date has passed."  *S.E.C. v. Wyly*, 788 F. Supp. 2d 92, 104 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).  To show fraudulent concealment, a plaintiff must show: 1) that the defendant concealed the existence of the . . . violation; 2) that the plaintiff remained in ignorance of the violation until sometime within

14

the . . . statute of limitations; and 3) that the plaintiff's continuing ignorance was not the result of lack of diligence." *Merced Irrigation Dist. v. Barclays Bank PLC*, 165 F. Supp. 3d 122, 135 (S.D.N.Y. 2016). "A claim for fraudulent concealment must be pled with particularity, in accordance with the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure." *Id.* (citations omitted). A plaintiff may demonstrate concealment by showing that a defendant "took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature to be self-concealing." *In re Natural Gas Commodity Litig.*, 337 F. Supp. 2d 498, 513 (S.D.N.Y. 2004).

The doctrine of equitable estoppel or tolling is similar, and "may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations[,] or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (citations omitted). This doctrine is only applied in "rare and exceptional circumstances," where "extraordinary circumstances prevent[] a party from timely performing a required act, and . . . the party acted with reasonable diligence throughout the period [it sought] to toll." *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (internal quotation marks and citation

omitted).

Neither doctrine applies here.  The only support in the proposed amended complaint for ADP's position that Capital fraudulently concealed its conduct or that equitable tolling is appropriate is that ADP served a subpoena *ad testificandum* on Capital in March 2021, and that Capital "resisted [ADP's] request for a deposition, arguing technicalities to self-conceal the information related to its work with Mr. Leonard."  (Prop. Am. Compl. ¶¶ 137, 138.)[7]  ADP has not provided, and the court is not aware of, any case law that stands for the proposition that resisting a subpoena[8] constitutes fraudulent concealment or requires the application of equitable estoppel.  Accordingly, because ADP did not commence within the statute of limitations with respect to its DTSA claim against Capital, and neither fraudulent concealment nor equitable estoppel applies, the claim is time-barred, rendering ADP's proposed amendments futile.

3.    *ADP's State Law Claims*

Because ADP's DTSA claim would not survive a motion to dismiss,

---

[7]  ADP also notes that it served a litigation hold letter on Capital in 2016.  (*Id.* ¶ 169.)

[8]  The proposed amended complaint also notes that Capital was at least somewhat cooperative with ADP's discovery demands.  (*Id.* ¶ 235.)

ADP would be relying on diversity jurisdiction[9] for its remaining state law claims, which would be destroyed if the complaint was amended making McKane a plaintiff and ADP a defendant.  (Prop. Am. Compl. ¶¶ 12, 14 ("Plaintiff . . . McKane is a . . . resident of the State of New York.")); *see Handelsman v. Bedford Vill. Assoc.*, 213 F.3d 48, 51-52 (2d Cir. 2000) (finding that, for diversity purposes, the citizenship of a limited liability company is the citizenship of its members).  The fact that the proposed amendments add ADP as a *nominal* defendant do not change this analysis. *See Rose v. Horan*, No. 17-CV-6408, 2018 WL 4344954, at *3 (E.D.N.Y. Sept. 11, 2018) ("In derivative actions commenced on behalf of an LLC, the LLC is not a nominal party but instead a necessary party under Rule 19 of the Federal Rules of Civil Procedure.  Therefore, as a necessary party, the court must take into account the LLC's citizenship for purposes of determining the presence of diversity jurisdiction." (citations omitted)). Therefore, ADP's proposed amendments with respect to these claims would be futile as the court would not have subject matter jurisdiction over the remaining state law claims on the basis of diversity.

---

[9] "28 U.S.C. § 2201 . . .  provides no independent basis for federal jurisdiction."  *Tamm v. Cincinnati Ins. Co.*, No. 18-CV-11415, 2019 WL 5722131, at *5 n.8 (S.D.N.Y. Aug. 15, 2019) (citing *Warner-Jenkinson Co. v. Allied Chem. Corp.*, 567 F.2d 184, 186 (2d Cir. 1977)).

**B.    Capacity**

The court now turns to defendants' converted motions, (Dkt. No. 25, 28, 30), against the operative pleading, (Compl.).  Among a host of other arguments,[10] defendants contend that ADP lacks the capacity to bring this suit.  (Dkt. No. 30, Attach. 1 at 14-19; Dkt. No. 43, Attach. 1 at 3-8; Dkt. No. 45 at 1-4; Dkt. No. 47 at 3-9; Dkt. No. 48 at 2-4.)  Specifically, defendants' argue that ADP is a limited liability company (LLC) with bylaws requiring the consent of a majority of its members to bring suit, and, thus, because Leonard, one of two ADP members, opposes the current lawsuit, ADP lacks capacity.  (Dkt. No. 30, Attach. 1 at 14-19; Dkt. No. 43, Attach. 1 at 3-8; Dkt. No. 45 at 1-4; Dkt. No. 47 at 3-9; Dkt. No. 48 at 2-4.)  On this issue, ADP argues that it has the capacity to sue despite Leonard's opposition and that defendants' converted motions for summary judgment

_____

[10]  Because defendants' converted motions are granted on capacity grounds, *see infra*, the court need not address defendants additional arguments in support of dismissal, to the extent it has not already.  Specifically, because Capital does not contest this courts' jurisdiction, (*see generally* Dkt. No. 25, Attach. 1), the court need not address Walsh, ePaint, Smartpaint, Fisher, and Netminder's jurisdictional arguments, to the extent it has not already, (Dkt. No. 28, Attach. 1 at 7-22; Dkt. No. 30, Attach. 1 at 5-14).  *See Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 700 (S.D.N.Y. 2021) ("Numerous courts in this Circuit have . . . adjudicat[ed] . . . motions despite the absence, or possible absence, of personal jurisdiction over some of the moving parties."); *see also O'Donoghue v. U.S. Soc. Sec. Admin.*, 828 F. App'x 784, 787 n.3 (2d Cir. 2020) ("We acknowledge that [two of the four defendants] argue, and the district court held, that [plaintiff] failed to make a prima facie showing of personal jurisdiction over them.  We decline to address the issue because we find the allegations lacking on the merits." (citation omitted)).

are procedurally defective.[11]  For the reasons that follow, defendants'
motions are granted.

"The capacity to sue or be sued refers to the qualification of a party to
litigate in court and is determined under Federal Rule of Civil Procedure 17
and under relevant state or federal law."  *DHIP, LLC v. Fifth Third Bank*,
No. 19-CV-2087, 2021 WL 4481118, at *5 n.10 (S.D.N.Y. Sept. 30, 2021)
(citation omitted).  An LLC's capacity to sue is determined by the laws of
the forum state.  *See* Fed. R. Civ. P. 17(b)(3) ("Capacity to sue or be sued
is determined as follows . . . for . . . [business entities other than a
corporation], by the law of the state where the court is located."); *see also*
*DHIP, LLC*, 2021 WL 4481118, at *5 n.10 ("For a limited liability company's
capacity to sue or be sued, Rule 17(b)(3) provides that a court is to assess
this under the law of the forum."[12] (internal quotation marks and citation
omitted)).  "Article IV of the New York LLC Act makes clear that the

---

[11] ADP argues that, because defendants did not submit statements of undisputed
material facts, the converted summary judgment motions must be denied pursuant to Local
Rule 56.1.  (Dkt. No. 49, Attach. 1 at 2-3.)  This argument is unpersuasive, as this Rule does
not apply to converted motions for summary judgment.  *See Almonte v. Public Storage Inc.*,
2011 WL 3902997, at *1 n.3 (S.D.N.Y. Sept. 2, 2011) (finding, under nearly identical local
rules, that a statement of material facts was not required for a summary judgment motion that
was converted by the court).

[12] While "[t]here is some question as to whether Rule 17(b) incorporates choice of law
rules," *MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*, No. 15-CV-3997, 2015 WL 6685523,
at *6 (S.D.N.Y. Oct. 29, 2015), this need not be determined here, because New York is both
the forum state and the state in which ADP was organized.  (Compl. ¶ 12.)

operating agreement of an LLC governs the relationships among members and the powers and authority of the members and manager."  *LNYC Loft, LLC v. Hudson Opportunity Fund I, LLC*, 57 N.Y.S.3d 479, 483 (1st Dep't 2017) (citing N.Y. L.L.C. Law § 417).  Accordingly, ADP's operating agreement determines what conditions, if any, must be met for ADP to bring suit here.

ADP's operating agreement states that: ADP's "business shall be managed by the Board of Managers . . . [and] shall be decided by the affirmative vote of a majority of the Managers."  (Dkt. No. 47, Attach. 1 at 6.)  The ADP operating agreement further states that "the Board of Managers shall have the power and authority, on behalf of [ADP], to . . . commence lawsuits and other proceedings."  (*Id.* at 7.)  "Member" is defined as "each [p]erson who . . . executes a counterpart of [the operating a]greement as a Member," and the only two to do so were McKane and Leonard, both of whom were also defined in the operating agreement as the only two "Managers" of ADP.  (*Id.* at 3-4, 20.)

Therefore, according to ADP's operating agreement, both McKane and Leonard must consent in order for ADP to bring suit, which is not the case here, as Leonard opposes the pending suit.  (Dkt. No. 28, Attach. 2

¶ 11; Dkt. No. 48, Attach. 1 ¶ 4.)  Accordingly, ADP does not have capacity

to bring the present action.[13]  *See LNYC Loft*, 57 N.Y.S.3d at 483 (citing

N.Y. L.L.C. Law § 417); *see also* Fed. R. Civ. P. 17(b)(3).  For this reason,

defendants' converted motions for summary judgment are granted.[14]

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants motions to dismiss, which were partially

converted to motions for summary judgment, (Dkt. Nos. 25, 28, 30) are

**GRANTED**; and it is further

**ORDERED** that ADP's first cross-motion to amend the complaint

---

[13]  ADP cites two cases, *W. View Hills, Inc. v. Lizau Realty Corp.*, 6 N.Y.2d 344, 347 (1959) and *Rothman & Schneider, Inc. v. Beckerman*, 2 N.Y.2d 493, 497 (1957), in support of its argument that ADP may still bring suit despite the terms of its operating agreement.  (Dkt. No. 49, Attach 1. at 6.)  However, both of these cases dealt with corporations, and neither case allows ADP to overcome the fact that an LLC is a "creature[] of contract," *BSP Agency LLC v. Katzoff (In re KG Winddown, LLC)*, 632 B.R. 448, 492 (Bankr. S.D.N.Y. 2021), whose capacity to sue is governed by its operating agreement, *see LNYC Loft*, 57 N.Y.S.3d at 483 (citing N.Y. L.L.C. Law § 417); *see also* Fed. R. Civ. P. 17(b)(3).

[14]  Capital requests that the court strike the declarations and exhibits that ADP submitted with its motion to dismiss response brief, because these "[d]eclarations and the exhibits attached thereto . . . are clearly extrinsic to the [c]omplaint."  (Dkt. No. 44 at 3-4.)  Given that defendants motions to dismiss were partially converted to summary judgment motions, the request to strike is denied, but the court notes that it did not consider any material submitted by any party for any purpose not permitted under the Federal Rules of Civil Procedure.  *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019)  (noting that courts may only consider certain limited documents outside of the four corners of a complaint when evaluating a Rule 12(b)(6) motion to dismiss); *see also Otero v. Purdy*, No. 3:19-cv-01688, 2021 WL 4263363, at *4 (D. Conn. Sept. 20, 2021) (noting that "[u]nder Federal Rule of Civil Procedure 56(c), the Court may consider" the entire record).

(Dkt. No. 38) is **WITHDRAWN**; and it is further

     **ORDERED** that ADP's second cross-motion to amend the complaint

(Dkt. No. 49) is **DENIED**; and it is further

     **ORDERED** that ADP's complaint (Dkt. No. 1) is **DISMISSED**; and it is

further

     **ORDERED** that the Clerk close this case; and it is further

     **ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

August 5, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge